## Phelps *versus* Pittsburgh, Cincinnati and St. Louis Railway Co.

99    108
30 SC ¹626

1. A parol contract of apprenticeship is not binding upon the parties thereto.

2. In this Commonwealth, a contract of apprenticeship in order to be binding on the parties, must comply with all the requisites of the act of September 29th 1770, 1 Sm. L. 309. It must, therefore, be in writing signed and sealed by the parties thereto.

3. In the Commonwealth of Ohio such contracts must also be by indenture signed and sealed by the parties thereto, otherwise they will not be deemed binding.

[Phelps *v.* Pittsburgh, &c. Railway Co.]

November 2d 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, TRUNKEY, STERRETT and GREEN, JJ. PAXSON, J., absent.

Error to the Court of Common Pleas, No. 2 of *Allegheny county :* Of October and November Term 1881, No. 146.

This was an action by D. F. Phelps by his next friend Susan Phelps, against the Pittsburgh, Cincinnati and St. Louis Railway Company, to recover damages for the breach of an alleged contract of apprenticeship. The narr., as amended, declared, in a single count . . . "for that whereas the defendant, a corporation created under the laws of the states of Pennsylvania and Ohio, heretofore, to wit: on the ——— day of ———, A. D. 1876, at Dennison, Ohio, to wit, at the county aforesaid, entered into and made a certain contract in writing (to the court here shown), in and by which it was then and there agreed between the plaintiff and the defendant, that he, plaintiff, should be employed as an apprentice to the said defendant, and as such apprentice to be taught the art and trade of machinist in their shops at Dennison aforesaid, and serve therein for the term of three years from the first day of May, 1876, rendering good and faithful service in the premises during said term, in consideration of his being taught and permitted to learn the art and mystery of said trade, the defendant agreeing to pay him for his services for and at the rate of 313 days in each year as follows, to wit: for the first year, ninety cents per day ; for the second year, one dollar and ten cents per day, and for the third year, one dollar and and thirty-five cents per day, when and at the expiration of said term of three years, the plaintiff should be instructed in the said trade of machinist, and skilled therein as mechanics in that trade ordinarily are instructed and skilled, to wit, at the county aforesaid." The narr. then averred that the defendant had, in August, 1877, unjustly "discharged the plaintiff from his said apprenticeship and employment, and prevented him from following said trade, and completing the learning thereof," etc., and claimed damages in the sum of $10,000. Plea, non assumpsit, payment with leave, etc.

On the trial, before KIRKPATRICK, J., the plaintiff produced and offered in evidence this paper :—

Office Master Mechanic, P., C. and St. L. Railway.
Dennison, Ohio, May 1st 1876.

I, D. F. Phelps, eighteen years of age, do hereby agree to bind myself to serve the Pittsburgh, Cincinnati and St. Louis Railway Company, as an apprentice, for the purpose of learning the machinist trade, for the term of three years from the date of this agreement. It being understood that for the 1st year of 313 days of said service I am to receive from the company 90

cents per day; for the 2d year of 313 days, $1.10 per day; for the 3d year of 313 days, $1.35 per day.

I further agree to forfeit to the said company the sum of fifty dollars ($50) should I leave their service before the expiration of the time above named.        D. F. PHELPS,

Apprentice.

Witness: Ross Kells, M. of M.,        SUSAN PHELPS.
    W. A. Stone, Foreman,
    Geo. M. Burns, Time Keeper.

[Indorsed: Agreement of D. F. Phelps, apprentice. May 1st 1876. Three years. 18 years of age. Machinist, occupation.]

To be followed by evidence that the plaintiff went into the service of the company and served them faithfully in pursuance of this agreement until he was discharged without reasonable cause.

Objected to: (1) Because upon its face it constitutes no contract between plaintiff and defendant, the defendant not being party to the paper in any way, nor has contract accrued enforceable in this action, by virtue of the fact set out in the subsequent portion of the offer with respect to the action of the plaintiff in going into the service of the defendant company. (2) Because the paper varies materially from that declared upon in the narr., and is not relevant under the pleadings in this case. (3) That there is apparent on the face of the paper offered, a total want of consideration. (4) As incompetent and irrelevant. Objection sustained; exception.

Plaintiff's counsel then offered to prove by witnesses, " that the company defendant, by their agents and servants at Dennison, employed the plaintiff and took him into their service as apprentice, on May 1st 1876, to serve them for three years at certain daily wages, counting three hundred and thirteen working days to the year, and that he entered into that service or apprenticeship under that agreement, and served them for the space of one year and four months, at which time the superintendent, agent, and servant of the defendant, to wit, the same person, Ross Kells, who employed him for them, discharged him, plaintiff, without reasonable cause, or good grounds and excuse, when he was willing and anxious to fulfill his undertaking with them, and serve the whole term of three years. By reason of which he was deprived of the wages he could have earned, and the trade he should have learned during that time; and the profit he could have gained from that trade during his lifetime thereafter."

Objected to, as incompetent and irrelevant. Objection sustained; exception.

[Phelps v. Pittsburgh, &c. Railway Co.]

Plaintiff's counsel then offered to prove by the plaintiff that he served the defendant for a year at 90 cents a day, and four months at $1.10 per day—wages inadequate to pay him for his services, except that it be on the ground that he was to learn his trade and be apprenticed to them; and at the end of one year and four months, or thereabouts, he was discharged from their service, and was prevented from fulfilling his contract or agreement with them to serve during the balance of the second year and for the third year. And also offers paper to show that had he not been an apprentice, his wages would have been double the amount at least; and that he should have received, and should now receive, double the amount at least of the money that by the contract with them he was to receive as an apprentice. For the purpose of showing that he (plaintiff) has sustained an absolute damage at least of the amount of the difference between the amount he should have received and what is here indicated. That is, the full wages, discarding the agreement, as they have done.

Objected to; objection sustained; exception.

The plaintiff's counsel then, by leave of the court, filed a narr. in the common counts, and renewed the above offers, which were again objected to and excluded by the court.

His Honor instructed the jury that, there being no competent testimony offered by the plaintiff, their verdict should be for the defendant. Verdict accordingly for the defendant, and judgment thereon. The plaintiff took this writ of error, assigning for error the exclusion of his offers of testimony as above set forth.

*A. M. Watson*, for the plaintiff in error.—Although the writing offered in evidence was not strictly an indenture of apprenticeship, it was admissible in evidence, under the common counts, to show a contract, enforceable by the plaintiff. It appeared on its face to be in the printed form in use by the defendants, and the execution of it by the heads of the department, in the company's shop, signing as witnesses, was the mode usually adopted by the company in receiving apprentices. We should have been permitted to show an employment in fact, in pursuance of the contract; in such case formal execution of the paper was unnecessary : Flannery v. Dechert, 1 Harris 507.

*Dalzell* (*Hampton* with him), for the defendant in error.— The narr. was on a contract of apprenticeship, the paper offered was not such a contract, under the statute law of Pensylvania, and it was therefore inadmissible. The paper was produced by the plaintiff, and no knowledge of it was brought home to the company. In the absence of such evidence, the fact that

[Phelps *v.* Pittsburgh, &c. Railway Co.]

plaintiff actually entered the shops of defendant and received the same wages as are mentioned in the paper, does not help the plaintiff, for the action is not for services rendered, but for damages for failure of defendant to teach plaintiff the trade of a machinist. The paper lacked both mutuality and consideration, and will not support an action : Lees *v.* Whitcomb, 3 Car. & Payne 289.

Mr. Justice GREEN delivered the opinion of the court, November 21st 1881.

The cause of action in this case is an alleged contract of apprenticeship. The plaintiff is the minor, and the defendant corporation is claimed to be the master. The affidavit of claim sets forth an article of agreement, dated May 1st 1876, by which the plaintiff claims to have bound himself *as an apprentice* to the defendant " for the purpose of learning the machinist trade," for the term of three years from the date of the agreement, and annexes a copy of the agreement ; and further avers that the plaintiff entered the service of the defendant *as an apprentice*, and continued therein for some time, when he was discharged without cause, and claims ten thousand dollars damages for breach of the agreement by the defendant. The narr. counts upon a contract in writing, " that the plaintiff should be employed as an apprentice to the said defendant, and as such apprentice to be taught the art and trade of machinist in their shops at Dennison," rendering good and faithful service " in consideration of his being taught and permitted to learn the art and mystery of said trade." Throughout the entire narr. the contract is described exclusively as a contract of apprenticeship, and the breach alleged is a refusal " to allow the plaintiff to continue longer to work as an apprentice," and " to complete and finish said apprenticeship," thereby " preventing plaintiff from acquiring and learning said trade of machinist." He claims ten thousand nine hundred dollars damages as the reasonable value of the trade as machinist, of which he was deprived and of the sum he might have made had he been permitted to learn the said trade according to the agreement.

There was no claim for wages for the services rendered by the plaintiff during the time he was at work.

In this state of the pleadings the plaintiff offered in evidence the written paper declared upon, and, that being rejected, made offers of verbal testimony to prove a contract of apprenticeship of the same tenor, and a similar breach, and to prove that the wages agreed to be paid for the actual service rendered were inadequate, " except it be upon the ground that he was to learn his trade and be apprenticed " to the defendant. These offers, also, were rejected, and the action of the court in refusing

[Phelps *v.* Pittsburgh, &c. Railway Co.]

them constitutes the subject-matter of the several assignments of error.

We are clearly of opinion that the learned judge of the court below was right in refusing to receive the testimony offered. The contract of apprenticeship is special and peculiar. Being made by a minor with an employer, who is sui juris, it is in this state regulated by statute, so as to make it obligatory. In order to produce this result the statutory requirements must be complied with. These are to be found in our Act of 29th September 1770, Purd. Dig. p. 72, pl. 4. The characteristics of the engagement are thus indicated by the statute : " All and every person, or persons, that shall be bound by indenture to serve as an apprentice in any art, mystery, occupation or labor, with the assent of his or her parent, guardian or next friend, although such persons, or any of them, were, or shall be, within the age of twenty-one years at the time of making their several indentures, shall be bound to serve the time," &c.

There must be a binding by indenture, the service must be that of an apprentice, and in some art, mystery, occupation or labor; and the contract must have the assent of a parent, guardian or next friend, or, by another act, of two or more magistrates when the contract is made by overseers of the poor. All these features are essential to the creation of a valid contract of apprenticeship. Thus, in Respublica *v.* Keppele, 2 Dall. 197, it was held that an indenture "to serve " only, and not to learn any trade, occupation or labor was not valid, either at common law or under any statute. In Guthrie *v.* Murphy, 4 Watts 80, it was held that an indenture executed without the consent of the minor's guardian was void, and no action could be sustained upon it, even for necessaries furnished by the master to the minor who had left his service before the term expired. To the same effect is Commonwealth *v.* Vanlear, 1 S. & R. 248.

The contract itself must be an indenture, and this has been held, both in England and in this state, to import an obligation under seal. In Reeves' Domestic Relations 484, the doctrine is thus stated : " Apprentices are persons bound to a master to learn some art or trade. . . . An apprentice to be holden must be bound by deed. . . . It would seem that an apprenticeship by parol, so far as it lays any obligation on the contracting parties, is utterly void. It will not amount to a hiring by the year, which may be by parol: 8 T. R. 374. That an apprentice cannot be bound, unless retained as such in a deed, is ascertained by the doctrine of the books. ·

Wood on Master and Servant 53 : " There is no question but that in this country, as well as in England, in order to constitute a valid contract of apprenticeship, which can be enforced

3 OUTERBRIDGE—8

as such either at common law or under the statutes, the contract must not only be in writing, but must also be by deed or indenture, as the statute provides, otherwise the relation of master and apprentice, in its usual or legal sense, does not exist."

In the case of Commonwealth *v.* Wilbank, 10 S. & R. 416, the very point was before this court, and it was held that although the contract was in writing and signed by both parties, yet as it was without seal, it was invalid as an indenture of apprenticeship. On p. 417 the court say : " On inspecting the writing, which is called an indenture, it appears to be subscribed by the parties, but not under seal. This is the only objection, so that the single question is, whether there can be *a binding*, by writing without seal, under the act of 29th September 1770. . . . I will not say that the word indenture in its largest sense might not comprehend a writing indented though not under seal. But certain it is, that when an indenture is spoken of, and particularly an indenture of apprenticeship, an instrument under seal is generally understood. It was said by HOLT, C. J., in the case of the Queen *v.* Callingwood, 2 Ld. Raym. 1117, that an apprentice cannot be bound without deed. And the law is so laid down in Burn. Inst. title Apprentice p. 37, and 1 Salk. 68. It might be fairly inferred, therefore, that our Act of Assembly required a deed, from the sense in which the word *indenture* was usually taken. But we are not left without explanation from other parts of the Act, in which the *covenants*, both of the master and the apprentice, are several times spoken of, which could not be without deed. The binding of apprentices is a matter of importance, and the forms prescribed by law should be preserved, as they give solemnity to the transaction. It is the opinion of the court, that a writing without seal, is not an indenture within the meaning of the Act of Assembly. This being the case, the writing now produced is not a valid indenture."

In the case now before us the writing in question has attached to it the signatures, " D. F. Phelps, Apprentice," and " Susan Phelps." To neither of these signatures is any seal appended. There is no execution by the defendant in any manner whatever. Neither the corporate seal, nor its name, is appended, nor that of any officer or person in its behalf. The paper itself is produced by the plaintiff, and it does not appear that any copy of it was ever in the possession of the defendant. On its face it only purports to be a declaration by the plaintiff that he agrees to bind himself to serve the defendant as an apprentice for the purpose of learning the machinist trade, upon certain terms as to payment. There are no covenants or stipulations of any kind on the part of the defendant. We are

[Phelps *v.* Pittsburgh, &c. Railway Co.]

clearly of opinion that in no point of view can this paper be sustained as a contract of apprenticeship, either under the Pennsylvania statute or at common law.

The case was not presented to us by the learned counsel for the plaintiff in error as any other than a Pennsylvania contract. The paper itself though dated at Dennison, Ohio, does not mention any place at which the service as apprentice was to be performed. But inasmuch, as, in the narr., the place at which the contract was made is mentioned as " Dennison Ohio," and in other portions of the narr., " Dennison " is referred to as " Dennison aforesaid," though the contract is not declared upon as an Ohio contract or to be governed by the law of that state, we have looked at the Ohio statutes to see if they contain any provisions respecting contracts of apprenticeship. We find in the Revised Statutes of Ohio (ed. 1860), vol. 1, p. 76, an act passed March 8th 1831, entitled " An act concerning apprentices and servants," containing numerous and elaborate details.

Section 1 provides as follows: " That any male person within the age of twenty-one or female person within the age of eighteen years, may be bound until they arrive at those ages respectively, or for any shorter period, to serve, as a clerk, apprentice or servant, in manner herein provided."

Section 2 provides for the binding of destitute children by township trustees.

Section 3 is in the following words : " That the indenture or covenant of service shall be signed and sealed by the father ; or, in case of the death or inability of the father, by the mother or guardian ; or, in case of an orphan or destitute child, by the trustees of the township, of the one part, and by the master or mistress, of the other part."

Then follow, in the subsequent sections, many and strict details of the matters which shall be contained in the indentures, and, especially, of covenants on the part of the master or mistress for the instruction and maintenance of the apprentice, also for the recording of the indentures, and for the hearing and trial of complaints by the apprentice against the master and by the master against the apprentice.

So far as any question in the present case is concerned, this statute is much more precise, minute and stringent in its provisions, than our Act of 1770. Especially, it requires that the contract shall be by indenture, which shall be signed and sealed by both parties to it.

It follows that whether the contract be considered as governed by the law of Ohio or Pennsylvania, it must be both signed and sealed by the parties, and as it lacks these requisites it is invalid as a contract of apprenticeship.

Judgment affirmed.

[Riddle *v.* Hall.]

SHARSWOOD, C. J., and TRUNKEY, J., dissent.

STERRETT, J., concurs in the judgment, but dissents from the reasons given in support thereof.