## Lingenfelter *versus* Ritchey.

1. Sparks conveyed by absolute deed without payment of any money consideration one-half of unpatented land to Hollar, who owned the other half. In an action for the land, parol evidence that the conveyance was made to obtain a patent for the whole in one, and to establish a trust for Sparks was admissible.
2. Porter v. Mayfield, 9 Harris 264, explained.
3. The 4th section of Act of April 22d 1856 (Trusts), is prospective.

May 12th 1868. Before THOMPSON, C. J., STRONG, AGNEW and SHARSWOOD, JJ. READ, J., absent.

Error to the Court of Common Pleas of *Bedford county :* Of May Term 1868, No. 54.

This was an action of trespass q. c. f. by Thomas Ritchey against Jacob Lingenfelter and others, in which the writ was issued, January 16th 1867. The pleas were "not guilty" and "liberum tenementum."

The plaintiff gave in evidence warrant of September 21st 1796 to Valentine Hollar; survey of October 25th for 448 acres. Prior to April 25th 1837, Abraham Sparks owned one-half of the survey, and Solomon Hollar, who was the husband of Sparks's sister, the other half. On that day Sparks conveyed to Solomon Hollar. On the 16th of May 1839, a patent was issued to Solomon Hollar for 448 acres, and in 1857 the executor of Solomon Hollar conveyed the whole tract to Thomas Ritchey the plaintiff; this tract includes *locum in quo*. The land was unimproved. Hollar paid the taxes from 1837. It was admitted that the alleged trespasses were committed by the defendants.

The defendants gave evidence that Solomon Hollar and Sparks

went to a scrivener and employed him to draw the deed of April 25th 1837, from Sparks to Hollar; both stated the object was to get both tracts patented in one patent, and save $10 of the patent fee; after the deed had been written it was read to the parties, who were satisfied with it; the consideration mentioned in the deed was $356, for which Sparks signed a receipt, but no money was paid; the scrivener was the only witness to the deed.   There was also evidence that after the conveyance Sparks built a lime-kiln on the land, burned lime, authorized others to do the same, and to take stone from the ground; and that on some occasions, when persons asked Hollar for stone or wood he sent them to Sparks to obtain his permission.   Sparks died intestate, unmarried and without issue about December 1854.   The defendants gave in evidence proceedings in partition February 17th 1855, on the estate ,of Sparks, in which the wife of Solomon Hollar and the wife of Ritchey the plaintiff were parties.   The tract in dispute was sold for $186, by the administrator of Sparks, and the sum included in his account.   Mrs. Hollar's heirs received her portion of the balance of the administration account.   All the heirs signed receipts for their shares.   Ritchey himself did not sign a receipt.   The title of the purchaser at administrator's sale of Sparks's interest in this land became vested, December 3d 1866, in Lingenfelter, one of the defendants.   At the time of sale the title of Hollar to the property was disputed, on the ground that the land had been conveyed to Hollar merely to procure the patent.   Solomon Hollar and wife were at the sale and gave, no notice of their claim.

The court (King, P. J.), charged:—"The court being of the opinion that parol evidence cannot be allowed to contradict or vary a deed, absolute on its face, in a controversy between the vendor and vendee, or parties claiming under them; and being further of opinion that the plaintiff is not estopped by reason of his acceptance of his wife's share of the balance due to her as one of the children of Solomon Hollar, from Mr. Cessna, administrator of Abraham Sparks, we instruct you, under all the evidence in the cause, to return a verdict for the plaintiff," &c.

There was a verdict for plaintiff for $16.50.

The defendants sued out a writ of error and assigned the above part of the charge for error.

*Tate, Kimmell & Lingelfelter* and *Russell,* for plaintiffs in error. —Parol evidence is admissible to show a trust: Field *v.* Biddle, 2 Dall. 171; McMinn *v.* Owen, Id. 173; Hurst *v.* Kirkbride, in S. C.; 1 Yeates 135; Miller *v.* Henderson, 10 S. & R. 290; Caulk *v.* Everly, 6 Whart. 303; Dinkle *v.* Marshall, 3 Binn. 588; Thompson *v.* White, 1 Dall. 424; Wallace *v.* Baker, 1 Binn. 610; Harvey *v.* Harvey, 2 Chan. C. 180; Hultz *v.* Wright, 16 S. & R.

[Lingenfelter v. Ritchey.]

346; Oliver v. Oliver, 4 Rawle 141; Renshaw v. Gans, 7 Barr 118; Parke v. Chadwick, 8 W. & S. 98; Miller v. Pearce, 6 Id. 97; Murphy v. Hubert, 7 Barr 420. The acceptance of the share of Sparks's estate was an estoppel: Adlum v. Yard, 1 Rawle 171; Stroble v. Smith, 8 Watts 280; Smith v. Warden, 7 Harris 429; Wilson v. Bigger, 7 W. & S. 111; Crowell v. McConkey, 5 Barr 175; Hamilton v. Hamilton, 4 Id. 195; Furness v. Ewing, 2 Id. 479; Benedict v. Montgomery, 7 W. & S. 238; Dean v. Connelly, 6 Barr 239; Spragg v. Shriver, 1 Casey 286; Wilkins v. Anderson, 1 Jones 399; Baily v. Baily, 8 Wright 276; Goodman v. Losey, 3 W. & S. 528; Maple v. Kussart, 3 P. F. Smith 348.

G. H. Spang and W. M. Hall, for defendant in error, cited, as to the trust: Porter v. Mayfield, 9 Harris 264; Act of April 22d, 1856, § 46, Pamph. L. 533, Purd. 497, pl. 3, 654, pl. 13; Barnet v. Dougherty, 8 Casey 372; Murphy v. Hubert, supra; Chaplin v. Rogers, 1 East 194; Emerick v. Emerick, 3 Phila. 94; Capehart v. Capehart, 2 Id. 134; McBarron v. Glass, 6 Casey 135; Strimpfler v. Roberts, 6 Harris 283. As to the estoppel: Brubaker v. Okeson, 12 Casey 519; Patterson v. Lytle, 1 Jones 53; Hill v. Epley, 7 Casey 331; Woods v. Wilson, 1 Wright 379.

The opinion of the court was delivered, July 2d 1868, by

AGNEW, J.—The legal title to the land in controversy was vested in Solomon Hollar by a patent dated 16th May 1837, for 448¼ acres of land. Hollar's title to 224 acres, the part in dispute, became regularly vested in Ritchey, the plaintiff below. The defendants claimed title under one Abraham Sparks. They alleged and, as the court took the facts from the jury, we may suppose proved by parol, a trust in Solomon Hollar for Abraham Sparks for one-half (224 acres) of the land held by him under the patent. The facts proved were that Hollar and Sparks, each owning 224 acres of the tract, which had originally been one of 448 acres, surveyed 1794, under a warrant to Valentine Hollar, agreed together to get it patented in the name of Solomon Hollar, to save patenting fees and probably the expense of two locations under the graduation law. For this purpose Sparks conveyed to Hollar by a deed of April 25th 1837, reciting a pecuniary consideration of $356. Corroborative circumstances as to Sparks taking off stone and burning lime on the place with the knowledge of Hollar, and the partition of the estate of Sparks after his death among his heirs, including this land, were given in evidence. The plaintiff rebutted by proof of one witness that Sparks said he had bought the land for Hollar at his own request, and the sum in Sparks's deed to Hollar was precisely the same as that in the deed made to Sparks. On this state of the case the court

[Lingenfelter *v*. Ritchey.]

below directed a verdict for the plaintiff on the ground that the
parol evidence was incompetent to vary the terms of the deed
from Sparks to Hollar, which were absolute on its face.    The case,
it is said, was ruled by the court below on the authority of Porter
*v*. Mayfield, 9 Harris 264.    The real ground of decision in that
case was the relation of landlord and tenant, existing between the
grantee and grantor after the execution of the deed, though the
judge did say the evidence was incompetent to contradict the
deed as between the grantor and grantee.    But this was said in a
case where there was no evidence, according to the report of it, to
show that the trust arose from the breach of any confidence re-
posed for a purpose, which would make it a fraud to use the deed
against the grantor ; and indeed the expression was no more than
a *dictum*.    We cannot therefore consider the point before us as
decided by Porter *v*. Mayfield.    In this case the evidence was of
what took place between the parties before and at the time of the
execution of the deed, and proved that the deed was made for the
sole purpose of having a single patent taken out in Hollar's name.
It was for their joint and mutual benefit, no money passing for
the purchase ; a confidence was reposed by Sparks in Hollar for
a special purpose, and on this ground he was induced to part with
his title.    The breach of this confidence was clearly bad faith,
and created a resulting trust.    The parties were brothers-in-law,
and if Sparks had not believed Hollar intended to carry out their
mutual arrangement in good faith when he procured the title from
the Commonwealth by the patent, he certainly would not have
executed the deed.    To say that the procuring of a title thus,
through a confidence reposed, the violation of which is clearly
fraudulent, cannot be shown by proof of what occurred in the
very transaction itself, and at the time of its consummation be-
tween the parties, is to open a door to fraud and close it to honest
trust.    The Statute of Frauds is a salutary act, but to suffer it to
become instrumental in the commission of such a palpable breach
of faith would make it a source of the grossest injustice; and
would enable a party to secure the fruit of every scheme into
which he can procure a friend to enter with him, on terms of the
greatest assurance.    The authorities I think forbid this to be done :
Thompson *v*. White, 1 Dall. 424 ; Church *v*. Church, 1 Casey 278.
This was a similar trust, the land being conveyed for the purpose
of obtaining a patent: Plumer & Crary *v*. Reed, 2 Wright 46 ;
McCulloch *v*. Cowher, 5 W. & S. 427 ; Parke *v*. Chadwick, 8
Id. 96 ; Morey *v*. Herrick, 6 Harris 128 ; Renshaw *v*. Gans, 7
Barr 118 ; Sheriff *v*. Neal, 6 Watts 534 ; Rankin *v*. Porter, 7 Id.
387 ; Lynch *v*. Cox, 11 Harris 265.    It was insisted in the argument
that the case falls within the 4th and 5th sections of the Act of 22d
April 1856.    As to the *creation* of the trust, the 4th section is
prospective, and as this case arose before the passage of the act,

[Lingenfelter v. Ritchey.]

nothing need be said. And as to the *limitation* for enforcing a resulting trust confined by the proviso to the 6th section to two years after the date of the act, we ought to express no opinion, the point not being raised in the court below. The question of actual possession by the cestui que trust during the time when the limitation was running, may have to be submitted to the jury under the evidence to be given at a future trial, and we ought not to anticipate it. The judge having put the case as to the trust solely on the incompetency of parol evidence to vary the effect of the deed, the case must go back for a new trial. We discern nothing in the circumstances in evidence to raise the question of estoppel.

Judgment reversed, and a *venire facias de novo* awarded.